[J-67-2016] [OAJC: Donohue, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| POCONO MOUNTAIN SCHOOL DISTRICT, | : | No. 87 MAP 2015 |
| | : | |
| | : | Appeal from the Order of the |
| Appellant | : | Commonwealth Court dated July 8, |
| | : | 2015, at No. 2052 CD 2014 Affirming |
| | : | the Order of the Pennsylvania |
| v. | : | Department of Education dated October |
| | : | 23, 2014 at No. EDU-2014-SLAP- |
| | : | 000176. |
| PENNSYLVANIA DEPARTMENT OF | : | |
| EDUCATION, DIVISION OF SUBSIDY | : | ARGUED: May 11, 2016 |
| DATA AND ADMINISTRATION, | : | |
| | : | |
| Appellee | : | |

## CONCURRING OPINION

**JUSTICE WECHT**                    **DECIDED: December 28, 2016**

I join the learned Opinion Announcing the Judgment of the Court ("OAJC") in its astute statutory analysis, and in its disposition. I write separately to emphasize my concerns with the existing funding scheme as it relates to charter schools and employee pensions.

The General Assembly codified the intent of the Charter School Law ("CSL") as follows:

> (1) Improve pupil learning[;] (2) Increase learning opportunities for all pupils[;] (3) Encourage the use of different and innovative teaching methods[;] (4) Create new professional opportunities for teachers, including the opportunity to be responsible for the learning program at the school site[;] (5) Provide parents and pupils with expanded choices in the types of educational opportunities that are available within the public school system[;] (6) Hold the schools established under this act accountable for meeting measurable academic standards and provide the school with a method to establish accountability systems.

24 P.S. § 17-1702-A.

Some charter schools, which operate independently from school districts but depend upon public funding,[1] have failed to satisfy these legislative aspirations. See Patrick J. Gallo, Jr., Reforming the "Business" of Charter Schools in Pennsylvania, 2014 BYU Educ. & L.J. 207 (2014) (hereinafter "Gallo"). "[T]he loopholes within Pennsylvania's flawed charter school funding formula and lack of fiscal oversight have presented an opportunity for profiteers." Id. at 215. Charter schools, on average, underperform, especially in comparison to traditional public schools. They reap substantial taxpayer dollars[2] but generally yield higher drop-out rates and lower academic performances. See id. at 226-28; see also Valerie Strauss, "A dozen problems with charter schools," The Washington Post, https://www.washingtonpost.com/news/answer-sheet/wp/2014/05/20/a-dozen-problems-with-charter-schools/ (May 20, 2014) (last reviewed August 25, 2016) (reporting that "only one in six of [Pennsylvania's] charter schools is 'high-performing'"). Lack of meaningful oversight exacerbates these problems. Gallo at 222-23.[3]

---

[1]   Section 17-1702-A provides that "[i]t is the intent of the General Assembly, in enacting this article, to provide opportunities for teachers, parents, pupils and community members to establish and maintain schools that operate independently from the existing school district structure[.]" 24 P.S. § 17-1702-A.

[2]   In the 2010-2011 fiscal year, over one billion in tax dollars went to Pennsylvania charter schools. Gallo at 215.

[3]   See also Kathy Boccella, "Pa. seeks better results, oversight with new charter school division," The Philadelphia Inquirer, http://www.philly.com/philly/education/20160825_Pa__seeks_better_results__oversight_with_new_charter_school_division.html (August 25, 2016) (last reviewed August 25, 2016) ("A report last week by the Pennsylvania School Boards Association said that charter school administrative expenditures were nearly double those of conventional public schools, and that their highest-ranking officials are paid far more. It also said such schools spend less on instruction than traditional school districts, and more on support services and facilities.").

The OAJC applies axiomatic principles of statutory construction, which lead to the conclusion that neither the School District nor the Commonwealth is liable for a charter school's outstanding Public School Employees' Retirement System ("PSERS") contributions. While I join the OAJC in its holding, it is evident that our conclusion could lead to one of two unfavorable outcomes.

In footnote 12, the OAJC draws a narrow and problematic distinction. According to the OAJC, Section 8531 of the Retirement Code does not obligate the Commonwealth to make good on Pocono Mountain Charter School's defaulted PSERS payments.[4] However, pursuant to the "State Guarantee" codified in Section 8531, the Commonwealth may nonetheless be responsible for guaranteeing pensions once payments become due at a future time. 24 Pa. C.S. § 8531.

On the other hand, our holding today could lead to loss of PSERS credit for charter school employees. The Retirement Code defines "credited service" as follows:

> School or creditable nonschool service for which the required contributions **have been made**, or for which the contributions otherwise required for such service were not made solely by reason of any provision of this part relating to the limitations under section 401(a)(17) [related to a compensation limit] or 415 of the Internal Revenue Code of 1986 (Public Law 99-514, 26 U.S.C. § 401(a)(17) or 415), [providing for limits on contributions] or for which salary deductions or lump sum payments have been agreed upon in writing.

24 Pa.C.S. § 8102 (emphasis added). The OAJC downplays the Commonwealth's and the PSERS Board's fear that the charter school employees here will lose credited service, calling it a "bald assertion." OAJC at 20, n.12. The OAJC avoids confronting the problem by stating that the issue is not before us. Id.

---

[4] Currently, the amount of the deficiency is $87,700.32. See OAJC at 6.

It is true that our decision here does not turn upon the question of who will bear the burden of lost retirement benefits. Nonetheless, the Commonwealth and the PSERS Board raise a valid concern. Our holding today reveals and underscores the grievous funding risk manifest by the CSL and Retirement Code provisions at issue in this case. This risk is realized when a charter school operator ignores its duty to contribute to the fund on behalf of its employees. Today's case uncovers a yawning gap in the pension funding scheme for Pennsylvania's charter school employees.

It is incumbent upon the General Assembly to provide a workable funding mechanism. When a charter school operator neglects its duty to contribute to the PSERS fund on behalf of its employees, and then absconds, defrauds, defaults, or ceases to exist, the Commonwealth (i.e., the taxpayers of Pennsylvania) should not be responsible for the operator's delinquency. Likewise, charter school employees should not be faced with the risk of losing rightfully earned credits (i.e., dollars). As the law currently stands, a charter school operator, such as the one at the center of this dispute, has no accountability. It seems clear as day that the General Assembly proactively should impose procedural safeguards that will attach while a charter school is still viable and operating, as a hedge against any prospect of future default. For example, the General Assembly could choose to amend the CSL by requiring charter schools to post bond sufficient to ensure compliance with their PSERS contribution obligations. Obviously, an inability to post bond would raise a red flag signaling that a charter should not be approved.

While the OAJC is correct that we are not called upon today to determine who loses in this situation — the Commonwealth as ultimate guarantor for PSERS or the teachers in losing credit they have earned — I urge the General Assembly to address this looming issue.